Good morning, Your Honors. Jeffrey Cheshire here. I represent the appellate, Mr. Garibay, and I would like to reserve three minutes of my time for rebuttal. Your Honors, the issue that we bring before the Court is two what we believe to be violations of the Fourth Amendment search and seizure requirements, the first being that Mr. Garibay was arrested at his sister's house. He was, by the evidence presented below, an overnight guest at that house. He was staying in one of his niece's bedrooms. He was the subject of an arrest warrant, but there was no search warrant in this case. The sequence of events was more or less this. The marshal's office received a telephone call from a confidential source indicating that Mr. Garibay was staying at his sister's house. The marshals then checked in and found that there was no warrant currently, but they contacted probation, who said that was in the works. Probation then petitioned the district court, which issued the arrest warrant subsequent to a petition to revoke supervised release. You've contended that the confidential informant was unreliable, for want of a better term. When did you first raise that in the district court? Your Honor, I think the issue here is not that necessarily the confidential informant is unreliable, but that we had no way to test their reliability. We have ‑‑ we raised it at the district level at the suppression hearing as well as in our motions pertinent to there, too. What we tried to do was find out more about this confidential source, and, of course, there's a difficult balancing that goes on with this in that the confidential sources need to be protected in order for them to come forth with evidence to the government. But what steps did you take in the district court to obtain that information? We filed motions to disclose the record of the name and then the record of the confidential source. I believe that we were ‑‑ I think we withdrew one of our motions to try to discover the identity of the source after discussions with the prior record of the confidential informant. So that's one of the issues that we bring before this court was the failure of the court below to even rule on our motion to disclose the criminal record of the confidential source. And the reason I think that's relevant is because had this case been submitted to a judge for a search warrant to enter this third party's house where would have been required to disclose to that court any evidence that they had about prior convictions or other evidence that would impact upon the truthfulness of the source. Was there a suppression hearing? Yes, Your Honor. And did the officers testify? Yes. And were you counsel below? Yes. Did you have the opportunity to question the officers about the information they obtained from the confidential informant? Yes. Did you ask these questions that you wish or that you want to ask now about identity and reliability? Your Honor, I guess I'm trying to recall exactly how we conducted it. What the officer testified to below, Deputy Graham, who was the lead arresting officer, was that he had previously received tips from this source regarding this particular defendant, Mr. Garibay, and had been able to arrest him before. So based on that and the fact that evident there was no incorrect tip that had been given that they found the person reliable. Why is that good enough? I mean, you had the chance to cross-examine, test his memory, test the facts, and what more did the district court need? Well, Your Honor, I didn't ask that question, but I don't think that it was waived in the sense that we requested the district court order production of that as disclosure or at least review it in camera I think would have been appropriate. I don't know that the officer himself knew of any prior record. I don't know if that officer ran the record of this person, but I don't think that that would necessarily be a waiver on our part because I think that it should have been reviewed by the court or disclosed to us if there was any negative information. Because here's what I go back to, Your Honor. Where there's no search warrant, the protection provided to persons in their house, in their home, which is, as we recognize, one of the most protected areas under the Fourth Amendment, the balance here is that while officers can enter that person's home to arrest them pursuant to only an arrest warrant or where they're residing, if it's not their own home, there's additional level of protection that they have in their house to believe that they can enter. So is it your contention that the Fourth Amendment violation here is the failure to get a search warrant? I think that that would have protected them, no doubt. I think that there is an exception to the search warrant. It would have also given them a much broader license than they actually exercised, wouldn't it? Clearly, because I think that in that case, they could have charged the homeowner with anything that they found within the home. Or they might have discovered things in closets or under beds or elsewhere in the home that might have belonged to your client. So in some sense, your client may be the beneficiary of things that the officers never found. That's true, but I think that that's a necessary, that necessarily flows because they're trying to hop from exception to exception within the Fourth Amendment. Do you want us to hold that the officers, that the Fourth Amendment violation, because the officers didn't do something that would have been more intrusive to your client? No, Your Honor. What I'm saying is that it would have potentially been damaging to my client had they have done that. But it's also protective in the sense that it's prophylactic to their entry into a house where they may not be justified to go under the probable cause exception. I have to say I'm now just a little bit confused as to what your argument is. If you're arguing that you should have been able to examine the C.I. or at least be able to test the C.I., that would go to the question of the arrest warrant, right? It might have gone to a question of a search warrant, but I see that as going to the question as to whether the officers legitimately obtained the arrest warrant, right? That's even a step back further. We didn't urge that in the briefs, but that's correct. Okay, so you're not challenging the arrest warrant? No, Your Honor. We're assuming that that's valid because it's issued pursuant to a violation of supervised release. Then if you're not challenging the arrest warrant, I have a hard time with the argument that the officers should have done something that was more intrusive to your client. That seems to be contrary to your client's interests. You can argue it if you want to, but it seems to be that the real question then is if the officers have a right to be there because they properly obtained an arrest warrant, were they entitled to look for the gun and the marijuana that they found in the bedroom? Well, that's the crux, Your Honor. There's no doubt that an arrest warrant enables officers to enter that person's own home under an exception to the search warrant requirement. So when they're an overnight guest in a third person's home, that this court has ruled, held that they have no greater rights in that third person's home as to their own. Let's assume that we thought, let's assume for right now that we think that the district court is wrong on the question, but I think that the district court is wrong on standing. Okay? So let's assume that your client has standing. Now, our cases look like they're pretty clear that even though your client is now handcuffed and out of the home, that the officers can go back in and look for anything that was in his immediate vicinity as a way of protecting themselves. Right. There's two points to that. The first is the initial threshold entry. And our argument is basically that under the Gorman line of cases, that the officers need a reason to believe that the subject is within the residence, and that standard is effectively the same as probable cause. So that's where I'm getting at in terms of all our arguments about the confidential source, the fact that it's not verified. They didn't see Mr. Garibay there at the residence. So I'm talking about the right that they have to enter a house, because if you step back. Was his car there? There was a car there. The confidential source said that that car was related to Mr. Garibay, but they had no, again, this is coming from the source. There's no independent verification that it's his car. They said a blue car will be there, and then that means Garibay's there. So what I'm getting at, Your Honor, is that if we step back and sort of move it to the absurd, just because they have an arrest warrant, officers are not allowed to enter houses at random. Go down the block, a block sweep, and just enter house, enter house, enter house. Certainly those would be a violation of those homeowners' rights if they found something in plain view. But it's also, under Gorman, in that line of cases, illegal for them to do that as to the subject of the arrest warrant. They need probable cause to believe that the person is within. Yes? Judge Gould, this is my question. Isn't it simply that they have to have a reasonable probability of finding the person in the house? Yes, and I think that my problem with this is that if they would have sought a search warrant, that they would have had to present evidence as to the reliability of the CI, including his record or her record, and that wasn't provided to us. So there's no way to test the reliability of that probable cause. What would they have asked for permission to search? They would have asked for permission to search the house in hopes of finding Garibay? They would have asked for a search warrant to look for Garibay within the house. Okay. So the thing that they would be looking for would be Garibay. Exactly. Is that standard? I have to say, I'm not sure I've ever seen one of those before, where we ask for a search warrant of a house in hopes of finding a person. I think, Your Honor, that my argument is that that would have protected them. I'm not saying it's standard. I understand that you think there would be some additional protections there, but then it not only doesn't protect, it gives the police much greater license to search the home. It's far more intrusive to Garibay's sister. It doesn't seem to have any standing here, but all of a sudden the cops can go rummaging through her drawers looking for whatever they want to, if they've got rights to search the house, right? It's certainly more intrusive, but there's also more protection because the neutral magistrate has reviewed the evidence brought to them by the police to allow the entry. And I think that that's precisely why the homeowner would have been protected in this situation against anything that they found. Say they entered the door and there's a bale of marijuana in the living room, they wouldn't have been able, I don't think, to turn around and charge the homeowner, Roxana Garibay, the sister, with that because they did not have a search warrant as to her and she would have standing. However, because he was an overnight guest, they did have the right to enter if they had probable cause to believe that he was within. And that probable cause standard is what I'm trying to look at here and to say that when it's only based upon a confidential source, that there are some additional protections that should have been applied, including disclosure or at least have the judge rule and maybe review in camera whether there was something about that that was problematic. Especially, Your Honor, I think that what's troubling to me is the sequence of events. The marshals get the call from the CI. There's no warrant at that time. And then the warrant is produced because of the supervised release violation. And the gun is dropped off during that time period. So we were not able to develop that line very much just because it's a confidential source. The line is that why was the gun there at the house? Are you suggesting that there's some kind of conspiracy with the police? No, Your Honor. Not at all. But if the CI is calling. I was just going to suggest to Judge Bybee that although Mr. Cheshire's over his time, that we let him have a minute for a rebuttal argument. I'll be happy to give Mr. Cheshire additional time for rebuttal. I think that's a good idea. Thank you, Your Honor. You may want to sort of sum up. I would like to because I wasn't able to address the other question that the court has, which was the second allegation or the second argument that we made, which was after they left the residence and then going back in, you had indicated, Your Honor, that why wasn't that simply a search incident to arrest? And obviously that's what the government's arguing. That's very clear. But I think that there's got to be some kind of logical limitation to the search incident to arrest doctrine. That the reason why that they can search incidents to arrest is to protect themselves and to secure evidence. Our cases, I think, are pretty clear on that. And it's clear that we have allowed police to go back into homes after somebody's been secured outside the home. Right. And my argument simply was that since they developed new information, our argument was that they were essentially pursuing a new line of investigation. It's not linked to the exception that will be underpinning to that exception. And since they're coming in on a different rationale, they should have sought a search warrant. Well, even with the new information, they would have gone in to obtain the marijuana, which they'd already observed, correct? That's correct, Your Honor. And what we argued regarding that was that the district court found that the gun was not in plain view, that they would have come back and seized the baggie. But it was this new information when they questioned the then-girlfriend. She volunteered or responded to their questioning that there's a gun in there. And they went and looked where she said and found it in that pile of clothing. The district court had ruled that it probably was – according to his view, it wasn't in plain view. Otherwise, they would have found it and seized it when they first went in. Thank you. Thank you, Your Honors. Thank you. Let's hear from the government. Good morning, Your Honors. Good morning. May it please the Court. Sarah Teslukai for the United States and the appellee. First, Your Honor, the fact of the matter is that the motion to suppress was actually conducted on July 18th. The information – the motion for the confidential informant was filed after the motion to suppress. At that time, we did the motion to suppress. It was found that – or the witness testified about the reliability of the informant and, in fact, had testified that he had known the informant for a year and a half, had known the informant to be accurate. In fact, this informant had informed the marshals of the defendant's whereabouts for the escape that he had committed a year and a half prior when he escaped from a halfway house. The informant said that the defendant was at his sister's house, which would be reasonable. If you're going to be on the run, you're going to be at a relative's house. He also identified the car related or associated to the defendant. And I'm using he just in a way. The agent then surveilled the house, saw the car that was allegedly associated with the defendant. He did not see the defendant leave the house because he had a picture while he was out there for over an hour and a half. And then, in fact, he called the informant to confirm that, in fact, the defendant was still at the house before they approached the house. But they never saw the – had the CI seen Mr. Garibay at the house?  He said the informant, and I'm just using he, said that the informant was still at the house, was currently there, but hadn't said specifically to Garibay. So the officer had not seen Garibay go in or out of the house? No, not at all. Counsel says that the officer should have gotten a search warrant. Your Honor, we say no. The government says no. And the reason – Well, I'm not surprised. Well, there are two valid felony arrest warrants for this defendant. He was on supervised release for two separate felony cases. There were the supervised release violations that the district court actually, who presided over this trial, issued those warrants for the defendant. They have reason to believe that the defendant was actually living in this house, and that's where there's some confusion because the government has always asserted this defendant was living at the time of the sister. The district court found otherwise. But either way, it's irrelevant to whether or not a search warrant was requested. In Peyton, if it's in his own home, we don't need the search warrant. In Underwood, which is a Ninth Circuit case, which allowed for the entry into a third-party home to arrest the suspect, Underwood stated nothing turns on the difference of whether it's his own home or another person's home. A person has no greater right to privacy in another person's home than in his own. So then the issue then turns to, was there reason to believe that this defendant was, in fact, in the house at the time they executed those arrest warrants? And I think the record is clear that they had reason to believe that, in fact, he was there. In fact, he was. Did defense counsel develop the unreliability of the confidential informant through the officer's testimony at the suppression hearing? No. And, in fact, the officer did testify he'd been reliable, been reliable for over a year and a half, had known his information to be accurate. So there was nothing that came out from the record to show that, in fact, the marshal had reason to discredit or not rely upon this informant. And is it correct the court has not, did never, it never ruled on the request by defense to disclose the identity of the informant? No. In fact, I think there was some confusion there. When the motion was filed, they asked if it was a specific person in speaking to counsel. When we said it wasn't that specific person that they thought was the CI, we thought it was withdrawn. So it never got addressed. And, in fact, counsel never brought up to the court again, you know, Your Honor, we filed this motion for the release of the informant or the informant's record. We would like a ruling. Nothing was brought up to the court saying we still have this motion pending. In fact, when we went to trial, there was no mention of we're still concerned about this outstanding motion. Can we at least get a ruling? The marshal was present. We could have done an in-camera hearing with the court if we had to prior to the trial. But nothing was brought up about that need or necessity by the defense to know this information about the informant prior to trial. So it was effectively never ruled on. It was, in effect, never ruled on. But it was never raised again by the defense either to get that ruling. And I think there was some confusion as to whether or not it was withdrawn by the fact that when they asked who if that specific person was the informant and was told no, we just thought it was done and didn't really go forward and say, you know, Your Honor, the judge even asked before is there any pending issues before the trial started. We said no. We're ready to go. Here are all our stipulations. I'm curious, following up on Mr. Cheshire's argument, whether it would have been appropriate for the officers to have requested a search warrant at the house in order to look for a person. Well, Your Honor. Have you ever seen one of those? I don't know. Maybe that's common. I haven't. But with respect to if there's a valid arrest warrant, you don't need one to go into a house. Right. But you wouldn't then have license by virtue of the fact that you can go look for Garibay doesn't mean that you get to go through his sister's drawers. Correct. And we didn't. But if you had a search warrant, that presumably would give you sort of broader run of the house. Yes. And, in fact, in this case, if you really look at what was done, they go to the house. They run into an individual who opens the door. They say, Hey, we have an arrest warrant for Garibay. The guy says there's someone in the back. They sweep the house really quickly. They go to the room where Mr. Garibay is. They pull him and his girlfriend out. They take them down. They put cuffs on them. They remove them from the house. The officer had seen the marijuana. He told the girlfriend right then and there, Hey, I saw the marijuana. Is there anything else I need to be concerned about? Any guns? Any other drugs? She says there's a gun at the bed. He goes directly right back into the room within three to four minutes, which is Hudson. I mean, the facts, other than that question to the girlfriend, we're right on point with Hudson. So he goes directly back into that room, picks up the marijuana, turns, looks at the bed, and there's the butt of the gun underneath some clothing. And the clothing is, the bed's like right here, and there's a pile of clothing that pretty much equals the bed. And the gun is on top of this pile of clothing. It was within a foot of where Garibay's feet were, which is within ease of reach of Garibay at the time of his arrest. They seize the gun. They find a magazine, which has ten bullets inside it. And they just take that. And they, the officer says he tossed the bed to make sure nothing else was there. They didn't find anything else. And that was the limit. And they're out. And, in fact, he doesn't even really do anything because he has to call ATF because all he's there to do is serve the search of the arrest warrants. So we're right on point with Hudson and this court's ruling in Hudson with respect to search incident to arrest. So we believe that the first initial entry into the house was allowable under the two arrest warrants, and that the second entry into the bedroom was allowable under search incident to arrest. With respect to the sentence in this case, we think it was reasonable. Do you think under Ninth Circuit precedent, do you think the Court should specifically address the transitory possession argument that Mr. Cheshire raises? No, Your Honor. Specifically, the Ninth Circuit has ruled that the district court does not have to address every issue raised. And, in fact, I think the Court should also look at the fact that the district court actually was the one who presided over the trial, presided over the motion to suppress. He told us at the time of sentencing, I've read the sentencing memorandum provided by the defense, the sentencing memorandum provided by the government. He heard the defense argue about the transitory possession. He heard the government argue against the transitory possession. And I just think when it really comes right down to it, he heard everything. And, in fact, when he started his sentencing of the defendant, he told the defendant, look, we're not here today because the police were looking for the gun. We're here today because you were not doing what you were supposed to be doing. There's these arrest warrants for you. That's how they're coming to get you is because you're not doing what you're supposed to do. And then, lo and behold, they find the gun. And then they go into his incredible extensive history where he's robbed people, where he's broken into people's houses, where he's transported drugs. And, in fact, you know, the fact of the matter is he qualified as a career offender for the transportation of drugs from Minnesota, which had to be transferred down to Arizona for him being on supervised release. So when you look at everything, the court specifically addressed the 3553 factors. It noted it and it said, looking at 3553, I can't get around the fact that I look at your record. I look at what you do. I look at that you waved your arms at authority. I look at the fact that you do what you want to do, when you want to do it, where you want to do it. And today it stops. And then he sentences him. He also sentenced him to the bottom of the guideline range. So when you look at everything, and then he ran concurrent, the supervised release violation. So when you look at everything, it's reasonable. And I just think that when he considered everything, the fact of the matter is the transitory possession that is argued by the defense was really unsupported by the record. The defendant never had to take the gun. The defendant had it in that house for over two days. There was no evidence to show that he did anything to attempt to get rid of the gun. And I think when you, when the defense, when the judge looked at everything, he just found that that was meritless and just didn't deserve comment and went into everything about the defendant that went into what caused him to sentence the defendant to the 235 months. And I would ask that you find that that was reasonable. Thank you, Ms. Zeppelikai. Thank you very much. Mr. Cheshire, you have a minute. Thank you, guys. I would like to clarify something in the record below. There were two motions relating to the confidential source. The first one was a motion to disclose the identity of the confidential informant. After discussions with the government about some concerns that we had, who that might have been, and given our evaluation of whether they were going to succeed, we were going to succeed or not in that motion, we ended up withdrawing that. So that was withdrawn. However, there was a second motion filed, and that was the motion to disclose the criminal record of the defendant, sorry, the confidential source. So event 41 in the clerk's record was the minute entry for the hearing. And that was filed after the suppression hearing? It was filed after the hearing but before the ruling. So the evidence was taken at that hearing, and then the matter was taken under advisement. During that interim period, while there was, before there was any ruling, and presumably we could have supplemented with additional information to the district court, we filed, realizing that this was a pretty serious issue in our minds, in event 44 on the 1st of August, a motion for disclosure of informant's criminal record. And then on event 55 on the 18th of August was when the order was issued denying our motion to suppress. And that's the motion that we're talking about, event 44 in the clerk's record, that was never ruled upon by the district court. So I don't want to confuse the issue here that there were two separate motions filed. The first one was withdrawn, and that's the one that Ms. Tesakai told that we had compromised on that. And did you ever disclose before the case ended or ask the court to rule on that motion or renew the motion in some fashion? No, we did not, Your Honor. And I think that part of that was we got involved in the trial, was coming up shortly thereafter, and I think it just was never litigated. But I don't think that we waived it thereby. I've read this court's case line. I don't think that we waived through that. Finally, if I could have just ten seconds to talk about the sentencing issue. The transitory possession issue, I think, is of concern to us, and it relates back to the confidential informant we honestly don't know, but the sequence of events being that the marshals are called, the gun is dropped off, the marshals come in, they find the gun. I'm definitely not saying that the marshals or anybody in the government was involved in any conspiracy to set up Mr. Garibay or sentencing entrapment. What I'm saying is the source may have had a motive to get at Mr. Garibay for some reason and may have dropped off the gun and then called in the police. Basically, the source or somebody in collusion with the source, that's one of our concerns. We honestly have no idea because we weren't able to get any of that information. Okay. Thank you very much. Thank you. Thank both counsel for the argument. Garibay is submitted.
judges: Gould, Bybee, Tymkovich